The decision below is signed as a decision of

the court.

Signed: January 13, 2005.



_____
S. Martin Teel, Jr.
United States Bankruptcy Judge


UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| CROSSROAD HEALTH MINISTRY, | ) | Case No. 04-00318 |
| INC., | ) | (Chapter 7) |
| | ) | |
| Debtor. | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| KEVIN R. McCARTHY, TRUSTEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary Proceeding No. |
| | ) | 04-10049 |
| WILLIAM J. BIERBOWER, | ) | |
| TRUSTEE, *et. al.*, | ) | |
| | ) | |
| Defendants. | ) | |

DECISION REGARDING TRUSTEE'S MOTION FOR SUMMARY JUDGMENT

The Chapter 7 trustee ("Trustee") commenced this adversary proceeding by filing a Complaint to Determine Ownership of Property.  This decision addresses the Trustee's motion for summary judgment on the question of whether the

Margaret Stewart Trust ("Stewart Trust") (whose trustees the Trustee has sued as the defendants) is entitled to a return of its $60,000 grant to the debtor so long as any administrative expenses or allowable claims against the bankruptcy estate remain unpaid.  The court will grant the Trustee's motion for the following reasons.

I

On September 15, 2003, the debtor, Crossroad Health Ministry, Inc. ("Debtor"), submitted a grant request to Stewart Trust seeking Stewart Trust's financial support of the Debtor's pediatric early intervention program.  On December 18, 2003, Stewart Trust approved a $60,000 grant (hereinafter, the "Grant Funds"), transmitting a check for that amount to the Debtor together with a letter stating that "[t]hese funds <u>must</u> be used in 2004 for the purposes stated in your proposal <u>unless changed with our written permission</u>." (emphasis added).  Stewart Trust did not expressly require the Debtor to place the Grant Funds in a separate account or otherwise segregate the funds.  The Debtor deposited the Grant Funds in its general operating account from which it paid various general operating expenses until it filed for bankruptcy on February 27, 2004, under Chapter 7 of the Bankruptcy Code (11 U.S.C.).

The Trustee has collected assets of $137,679, and faces

scheduled priority withholding tax claims exceeding $90,000, general unsecured claims totaling $148,080.04, and claims filed through May 20, 2004, not including any priority tax claims, total $121,822.31.  Accordingly, the Trustee does not anticipate a surplus of assets after administrative expenses and allowed claims are paid.

Stewart Trust asserts that because the Debtor was required to use the Grant Funds in 2004 for the purposes stated in the Debtor's proposal, those funds should either be distributed to another charitable organization or returned to Stewart Trust.

II

The question before the court is whether, due to the charitable use restriction placed upon the Grant Funds by Stewart Trust, those funds should be excluded from the Debtor's bankruptcy estate, and either distributed to a different charitable organization or returned to Stewart Trust.[1]  As described in more detail below, under District of

---

[1] Stewart Trust has also suggested that the temporal proximity between the debtor's solicitation of the Grant Funds and the filing of bankruptcy demonstrates wrongdoing on the Debtor's part.  If Stewart Trust's allegations were true, and the debtor wrongfully concealed material information in order to induce Stewart Trust's donation, imposition of a constructive trust in Stewart Trust's favor might be appropriate.  Stewart Trust has failed to provide the court with any evidence to support such a theory, and the court will

Columbia law, grant funds subject to a charitable use limitation remain an asset of the corporation, not an asset held by the corporation in trust. Accordingly, the Grant Funds remain an asset of the bankruptcy estate available to satisfy claims of creditors and to pay administrative expenses in these proceedings.

### A.   There is no "resulting" trust

In its Opposition to the Trustee's Motion for Summary Judgment (D.E. No. 18, filed September 20, 2004), Stewart Trust argues that by placing a charitable use limitation upon the Grant Funds, a "resulting trust" arose and Stewart Trust retained an equitable interest in the Grant Funds.

A resulting trust "is a property relationship designed to effectuate the parties' intent when one party takes title to property for which another has furnished consideration." Edwards v. Woods, 385 A.2d 780, 783 (D.C. 1978) (holding that the equitable remedy of a resulting trust must be applied to

---

not impose a constructive trust based solely on unsupported allegations.

The Trustee has expressed concern that a constructive trust in favor of Stewart Trust would likely remain subordinate to the Internal Revenue Service's $90,000 tax lien. See Blachy v. Butcher, 221 F.3d 896, 906 (6th Cir. 2000) (holding that "a judicially-created equitable remedy cannot be applied retroactively to defeat a choate federal tax lien."). This, argues the Trustee, could pose a marshaling problem. It is unnecessary for the court to reach this issue because the court is not imposing a constructive trust.

effectuate justice where one individual paid the purchase price for real property, but another individual took formal title to that property).  Collier on Bankruptcy notes that although the equitable remedy of a resulting trust is akin to the constructive trust, "[a] resulting trust, unlike a constructive trust, seeks to carry out a donative intent rather than to thwart an unjust scheme.  The general rule is that where a transfer of property is made to one person and the purchase price is paid by another, a resulting trust arises in favor of the person by whom the purchase price is paid."  Collier on Bankruptcy ¶ 541.11[3] at 541-67 (15th ed. as revised March 2003), quoting United States v. Marx, 844 F.2d 1303, 1309 (7th Cir. 1988) (internal quotations and citations omitted).

   The parties have not identified and the court can find no support for the proposition that the equitable remedy of a resulting trust has any application under these facts.  Accordingly, the court must reject Stewart Trust's assertion that the restriction placed upon the Grant Funds gave rise to a resulting trust.

5

**B.   In the District of Columbia, donations subject to charitable use restrictions are corporate assets and can be used to pay a liquidating non-profit corporation's creditors and dissolution proceeding expenses**

In his motion for summary judgment, the Trustee argues that D.C. Code § 29-301.56, which governs dissolution of non-profit corporations in D.C. state court proceedings, substantively determines the state-derived property rights in the grant funds for purposes of these bankruptcy proceedings. In pertinent part, that statute provides for the following distribution of assets in state court dissolution proceedings:

> (c) The assets of the corporation or the proceeds resulting from a sale, conveyance, or other disposition thereof shall be applied and distributed as follows:
>
> (1) All costs and expenses of the court proceedings and all liabilities and obligations of the corporation shall be paid, satisfied, and discharged, or adequate provision shall be made therefor;
>
> (2) Assets held by the corporation upon condition requiring return, transfer, or conveyance, which condition occurs by reason of the dissolution or liquidation, shall be returned, transferred, or conveyed in accordance with such requirements;
>
> (3) Assets received and held by the corporation subject to limitations permitting their use only for charitable, religious, eleemosynary, benevolent, educational, or similar purposes, but not held upon a condition requiring return, transfer, or conveyance by reason of the dissolution or liquidation, shall be transferred or conveyed to 1 or more domestic or foreign corporations, societies, or organizations engaged

>     in activities substantially similar to those of
>     the dissolving or liquidating corporation as the
>     court may direct.

According to the Trustee, § 29-301.56 directs that a corporation fully satisfy each enumerated portion of the distribution statute before even considering whether subsequent subsections might apply.  Thus, before a liquidating non-profit corporation can even reach the question of whether certain corporate assets must be returned or transferred to a different entity pursuant to D.C. Code §§ 29-301.56(c)(2)-(3), the statute <u>first</u> requires that "[a]ll costs and expenses of the court proceedings and all liabilities and obligations of the corporation [must] be paid, satisfied, and discharged, or adequate provision [ ] made therefor."  D.C. Code § 29-301.56(c)(1).  Thus, argues the Trustee, under District of Columbia law, funds held by a non-profit corporation subject to charitable use limitations are corporate assets available to creditors upon dissolution or liquidation, notwithstanding the restriction placed upon such funds by the donor.

Stewart Trust interprets the statute differently.  According to Stewart Trust, the three enumerated subsections of D.C. Code §29-301.56(c) can be separately triggered, and subsection (c)(1), calling for the payment of all creditors

7

and expenses, simply does not apply to funds that fall within subsections (c)(2)-(3). As such, a liquidating non-profit corporation holding funds subject to a charitable use restriction would be governed <u>solely</u> by subsection (c)(3), and such funds would not be available to satisfy creditors or the payment of expenses under subsection (c)(1), because those funds would be either returned to the donor or distributed to a different charitable organization.

    Basic principles of statutory construction support the Trustee's reading of the statute. The terminology "as follows" suggests that distributions are to proceed in a sequential fashion, with expenses of dissolution and claims of creditors to be paid first as listed first. Moreover, a dissolution will require paying compensation to professionals who are employed to facilitate the dissolution, otherwise such professionals will not be attracted to handle the dissolution. The legislature would not have envisioned such professionals being put to the risk that distributions would be made under paragraphs (2) and (3) before paying such professionals under paragraph (1). It is thus evident that distributions under paragraph (1) were intended to be made first. Accordingly, the court agrees with the Trustee that District of Columbia law treats donations held by non-profit corporations subject

to charitable use limitations as corporate assets, at least to the extent that such funds are needed to pay creditors and administrative expenses associated with liquidation proceedings.

Distribution of estate assets in a bankruptcy case is governed by federal law. Although the bankruptcy court is thus not bound by the distribution <u>scheme</u> set forth in D.C. Code § 29-301.56, the statute reflects a legislative determination that funds subject to such restrictions are a legitimate source of payment to creditors and of liquidation expenses, thus constituting to at least that extent property of the estate, and that only the residue is to be treated differently than unrestricted corporate funds.[2] Accordingly, the assets at issue here are to be treated as estate assets.[3]

---

[2] In the alternative, D.C. Code § 301.56 may reflect a legislative determination consistent with <u>Boston Regional Medical Center, Inc.</u>, 298 B.R. 1 (D. Mass. 2003), that although funds subject to charitable use limitations may, in fact, be held by a non-profit corporation in trust, paying a non-profit corporation's creditors for services previously rendered in furtherance of that organization's charitable purpose is deemed consistent with such limitations. Thus, even if Stewart Trust could demonstrate that imposition of the limitation gave rise to a trust relationship between the Debtor and Stewart Trust, District of Columbia law has determined that a non-profit corporation does not breach that trust when it uses such funds to pay creditors and dissolution expenses.

[3] This case does not present an issue of whether the marshaling doctrine will apply to require exhaustion first of

9

### C.  Applicability of the D.C. Uniform Trust Code

It is surprising that neither party has addressed the question of whether the D.C. Uniform Trust Code, which governs, <u>inter</u> <u>alia</u>, express and charitable trusts,[4] is relevant to this dispute.  <u>See</u> D.C. Code § 10-13.01, <u>et</u> <u>seq.</u>  If the court did not have the benefit of D.C. Code § 29-301.56, it would be appropriate to analyze the facts of this case under the D.C. Uniform Trust Code.  As such, it would be the task of this court to determine, <u>inter</u> <u>alia</u>, whether Stewart Trust intended that the Grant Funds be held by the Debtor in trust rather than outright.  Here, however, D.C. Code § 29-301.56 obviates the need for such inquiry, because in the District of Columbia, as a matter of law, funds subject to a charitable use limitation are considered assets of the estate, and not funds held in trust, to the extent necessary to satisfy claims against the estate.

### III

For the foregoing reasons, the court will grant the

---

funds other than those subject to charitable use limitations when more estate assets are available than are necessary to satisfy all claims against the estate.  Here, the claims against the estate exceed the estate funds.

[4] Although neither party has used the term "charitable trust," that seems to be the only form of trust that could have resulted from the transaction at issue.

trustee's motion for summary judgment.

                                                               [signature appears above]
                                                                 S. Martin Teel, Jr.
                                                               United States Bankruptcy Judge

Copies to:

Kevin R. McCarthy
McCarthy & White, PLLC
8180 Greensboro Drive
Suite 875
McLean, VA 22102

William J. Bierbower
888 17th Street, NW
Suite 210
Washington, DC 20006

Michael R. Murphey
1320 19th Street, NW
Suite 202
Washington, DC 20036

Howard H. Williams
888 17th Street, NW
Suite 210
Washington, DC 20006